DECISION
Dr. Marian Hulllman Ascarelli, defendant-appellant, appeals from the judgment of the Ohio Court of Claims. The trial court found appellant was not entitled to personal immunity pursuant to R.C. 9.86.
On April 6, 1998, plaintiffs-appellees, Gerald Potavin, Jr. and Annabelle Cempolongo (hereinafter "appellees"), filed a complaint against the University of Cincinnati Medical Center, defendant-appellee (hereinafter "UCMC"), in the Ohio Court of Claims. Appellees filed their complaint both individually and as guardians of their child, Gerald John Potavin, III. In their complaint, appellees alleged that as a direct and proximate result of UCMC's negligence, through its agents, employees, and physicians (during the child's birth on September 13, 1995), their child "sustained permanent and profound brain damage, severe and permanent disabling injuries, resulting in physical and mental pain and suffering as a result of which he will be permanently injured."
In its answer to appellees' complaint, UCMC stated that any injuries and/or damages sustained by appellees "were caused or contributed to by the independent, intervening and/or superseding acts or omissions of persons or parties other than [UCMC], and for which [UCMC] is not liable." Appellant was one of the doctors involved in the child's delivery. Appellant was not directly employed by UCMC but, instead, was employed by the Foundation for Obstetrics and Gynecology ("FOG") at the time of the incident. Appellant was also a volunteer instructor for the Department of Obstetrics and Gynecology ("OBGYN Department") for UCMC.
On June 8, 1998, the trial court filed notice of a status conference for the purpose of reviewing "any potential immunity issues pursuant to R.C. 2743.02(F)." On August 16, 1999, appellees filed a motion requesting the trial court hold an evidentiary hearing concerning whether appellant was an officer or employee of the state of Ohio pursuant to R.C. 109.36(A)(1)(b), in order to determine whether she was entitled to statutory immunity. The trial court, by entry filed September 10, 1999, stated that appellant "may participate in the *** evidentiary hearing either with counsel or pro se, if she so desires." On December 3, 1999, the trial court filed an entry, which stated:
 On October 29, 1999, this court conducted a status conference with the parties in the above-captioned case. At the conference, counsel for both parties agreed that [appellant] is not entitled to personal immunity pursuant to R.C. 2743.02(F) and 9.86. Therefore, the parties shall file a stipulation regarding the immunity status of [appellant] on or before December 17, 1999.
On December 17, 1999, UCMC filed a motion requesting the court "rule that at all relevant times [appellant] was not a state employee and therefore is not entitled to civil immunity pursuant to R.C. 9.86 and 2743.02(F)."
The parties were unable to agree on a stipulation entry so an evidentiary hearing was held before the court on April 20, 2000. During the hearing, appellant was represented by counsel. At the end of the hearing, the trial judge ruled that appellant was not a state employee or a state officer and, therefore, was not entitled to immunity. The trial court's decision was journalized by judgment entry filed May 26, 2000. Appellant has filed an appeal of that decision, and presents the following three assignments of error:[1]
 I. THE TRIAL COURT ERRED IN DENYING DR. ASCARELLI CIVIL IMMUNITY PURSUANT TO R.C. § 2743.02(F) AND 9.86 BECAUSE IT INVOKED A PRESUMPTION AGAINST IMMUNITY AND FAILED TO REQUIRE PLAINTIFF/APPELLEE TO DISPROVE DR. ASCARELLI'S ENTITLEMENT TO IMMUNITY AS REQUIRED BY OHIO LAW.
 II. THE TRIAL COURT ERRED IN DENYING DR. ASCARELLI CIVIL IMMUNITY PURSUANT TO R.C. § 2743.02(F) AND 9.86 BECAUSE IN DOING SO IT VIOLATED HER RIGHTS OF EQUAL PROTECTION AS GUARANTEED BY ARTICLE 1 § 2 OF THE OHIO CONSITUTION AND AMENDMENT XIV OF THE UNITED STATES CONSTITUTION.
 III. THE TRIAL COURT ERRED IN DENYING DR. ASCARELLI CIVIL IMMUNITY PURSUANT TO R.C. § 2743.02(F) AND 9.86
BECAUSE PLAINTIFF/APPELLEE FAILED TO OFFER A SCINTILLA OF EVIDENCE DISPROVING DR. ASCARELLI'S ENTITLEMENT TO IMMUNITY.
Appellant argues in both her first and third assignments of error that the trial court erred in finding she was not entitled to immunity pursuant to R.C. 2743.02(F) and 9.86. Appellant claims the court invoked a presumption against immunity and failed to require appellees to disprove appellant's entitlement to immunity. We will only address the question of whether the trial court erred when it found appellant was not entitled to immunity based upon its finding that she was not an employee of the state of Ohio.
State officers and employees are afforded immunity pursuant to the terms of R.C. 9.86, which states:
 [N]o officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.
The issue of whether R.C. 9.86 provides appellant immunity must first be resolved in the court of claims because the "state's liability is dependent upon whether a claimant proves that the employee `would have personal liability for his acts or omissions but for the fact that the officer or employee has personal immunity.'" Campbell v. Johnson (Dec. 30, 1999), Franklin App. No. 99AP-483, unreported, discretionary appeal not allowed (2000), 88 Ohio St.3d 1503, quoting R.C. 2743.02(A)(2).
By its terms, R.C. 9.86 requires a preliminary determination concerning the status of an individual because the immunity provided under R.C. 9.86
applies to officers or employees of the state. Cullen v. Ohio Dept. of Rehab. Corr. (1998), 125 Ohio App.3d 758, 765. The question of whether a doctor is entitled to immunity is a question of law. Hopper v. Univ. of Cincinnati (Aug. 3, 2000), Franklin App. No. 99AP-787, unreported, following Nease v. Medical College Hosp. (1992), 64 Ohio St.3d 396,400.
The version of R.C. 109.36(A), in effect at the time of the incident forming the basis of appellees' complaint, defines an "officer or employee" as:
 [A]ny person who, at the time a cause of action against him arises, is serving in an elected or appointed office or position with the state or is employed by the state or any person that, at the time a cause of action against the person, partnership, or corporation arises, is rendering medical, nursing, dental, podiatric, optometric, physical therapeutic, psychiatric, or psychological services pursuant to a personal services contract or purchased service contract with a department, agency, or institution of the state; [or is rendering medical services to patients in a state institution operated by the department of mental health, is a member of the institution's staff, and is performing the services pursuant to an agreement between the state institution and a board of alcohol, drug addiction, and mental health services described in section 340.021 of the Revised Code.] Officer or employee does not include any person elected, appointed, or employed by any political subdivision of the state.
In the present case, appellant stated in her interrogatory that she was not an employee of the state of Ohio. However, this admission does not resolve the issue whether appellant is an officer or employee of the state. A review of R.C. 109.36 shows that the issue whether a person is an officer or employee of the state cannot be answered simply by an admission that a person is not an employee of the state or by a showing that the employee was not directly compensated by the state. For example, in Wade v. Ohio State Univ. Med. Ctr. (Aug. 1, 2000), Franklin App. No. 99AP-759, unreported, we found a doctor was an employee of the state of Ohio even though the doctor's only compensation came from a private practice group comprised of faculty of The Ohio State University Medical Center's Department of Surgery. Therefore, in order to determine whether appellant was an "employee or officer" of the state, we must analyze the relationships between appellant, UCMC, and FOG.
A review of the testimony given in a deposition by Dr. Robert W. Rebar, a professor and director of the OBGYN Department at the time of the incident forming the basis of appellees' complaint, shows UCMC had a high degree of control over FOG. FOG was required to operate within the guidelines provided by the university to the point the university had to approve the amount of compensation doctors employed by FOG received. Dr. Rebar stated:
 [T]he guidelines provided that [FOG] had to run as a not-for-profit entity; that it could not overly compensate any individual. In fact, on a yearly basis, the total compensation of each individual faculty member and fellow has to be approved by the dean of the College of Medicine. That raises couldn't be disproportionate; that bonuses couldn't be disproportionate; and that the practice plan be administered in what was deemed to be a fair and equitable way by the university.
 [A]s department director, [I] met with the dean yearly to have the budget approved and to have the total compensation of each faculty member within the department approved. And total compensation from all sources meaning from FOG and from the University.
Dr. Rebar stated in his deposition that the University of Cincinnati Board of Trustees allowed UCMC departments to create not-for-profit corporations similar to FOG, "whose purpose it is, to bill on behalf of the services rendered and to distribute them, the funds solely received, in a manner approved by the dean of [UCMC] and the Board of Trustees of the University." FOG was created in 1985 with the approval of the dean of UCMC and the board of trustees of the university. Dr. Rebar stated that even though FOG is a separate legal entity from the University of Cincinnati, FOG "wouldn't exist without the University of Cincinnati because it couldn't exist."
Dr. Rebar stated that less than five percent of the funds for the OBGYN Department's budget come from the state of Ohio. The remaining ninety-five percent come from either FOG's billing for medical services or from research grants and gifts to the university. Dr. Rebar also stated that "FOG, each year, gives a significant contribution to the University of Cincinnati so that we can pay our employees." Concerning the separate nature of FOG's profits, Dr. Rebar stated: "I have no doubt that if the dean of the College of Medicine wanted all the money in FOG at any given moment in time, that he has the authority and the power to totally take the monies out of FOG over to the College of Medicine [because] any of the monies that belong to FOG belong to the College of Medicine."
Concerning appellant's status in relation to UCMC and FOG, Dr. Rebar stated that appellant had a faculty appointment as a volunteer instructor and that "[a]ll faculty members are also members of FOG." Dr. Rebar stated that the reason for the dual arrangement was because he "could not employ the department, the school could not employ faculty members, if all we compensated them was the monies that were available through the State of Ohio. We wouldn't have any faculty members." Dr. Rebar stated in an affidavit that appellant "was a volunteer faculty member and instructor with the Department of Obstetrics and Gynecology at the University of Cincinnati on or about September 30, 1995 and was an attending staff member of [UCMC] on that date."
The record also contains a letter dated April 26, 1995, from UCMC to appellant. The letter, signed by Drs. Rebar and John Hutton, the dean of UCMC, stated that a "new position has been developed within the [OBGYN Department] at [UCMC] for which you are well qualified. We are pleased to offer you an appointment as Volunteer Instructor in Obstetrics and Gynecology." The letter also stated that "[f]ailure to participate actively in resident and student education constitutes grounds for loss of your appointment." Dr. Rebar stated that the purpose of the letter was to ensure that the University of Cincinnati and the state of Ohio were not responsible for reimbursement or compensation of any individual appointed to a faculty position similar to appellant's position.
The letter can also be characterized as a contract between UCMC and appellant. The letter stated what "conditions, responsibilities and opportunities" appellant would have if she accepted the position with UCMC. Appellant was required to sign the letter if she accepted the conditions provided. Appellant did sign the letter as a copy of the letter was provided to the court.
Appellant also received a letter from FOG, which detailed the compensation she would receive as an employee of FOG. Dr. Rebar further stated that "it is typical for everyone to get two letters — one from the University and one from [FOG]. That's true of all faculty and anyone who has joint compensation." Because of the two letters, it is clear that UCMC intended to compensate appellant for her services as a "volunteer faculty" member with UCMC by funds collected and distributed by FOG even though she was characterized by UCMC as a "volunteer."
Even though FOG and UCMC were separate legal entities, the evidence shows FOG and UCMC functioned as one entity in several ways. FOG could not exist if not for its relationship with UCMC, and UCMC could not compensate its employees if not for its relationship with FOG. The fact that appellant served as both a faculty member of UCMC and employee of FOG at the time of the child's birth is reason enough to conclude appellant may be entitled to immunity pursuant to R.C. 9.86. Appellant had a contractual relationship with UCMC and UCMC compensated appellant for her services rendered under that contract through FOG, which was controlled exclusively by UCMC. Therefore, even though appellant did not receive compensation directly from the state, we find appellant was an employee of the state of Ohio pursuant to R.C. 109.36(A).
We note that the arrangement between UCMC and FOG is also very similar to the arrangement in Wade, supra, which involved The Ohio State University Medical Center ("OSUMC"), a state hospital, and the Department of Surgery Corporation ("DSC"), a private physician practice group comprised of the faculty of OSUMC's Department of Surgery. The issue we addressed in that case was whether Dr. James G. Wright, an employee of DSC and faculty member at OSUMC, was an employee of the state of Ohio and, therefore, entitled to personal immunity pursuant to R.C. 109.36. We found Dr. Wright was an employee of the state of Ohio and, therefore, was entitled to immunity based upon an agreement between OSUMC and DSC to provide medical services. DSC was analogous to FOG in that DSC had sole discretion over which physician would provide medical services and the only compensation Dr. Wright received was from DSC. See, also, Ferguson v. Ohio State Univ. Med. Ctr. (June 22, 1999), Franklin App. No. 98AP-863, unreported, discretionary appeal not allowed (1999),87 Ohio St.3d 1432; Scarberry v. Ohio State Univ. Hosp. (Dec. 3, 1998), Franklin App. No. 98AP-143, unreported, discretionary appeal not allowed (1999), 85 Ohio St.3d 1443.
Accordingly, we find that the trial court erred when it concluded that appellant was neither an officer nor an employee of the state of Ohio at the time of the incident. We note that we do not address whether appellant was acting within the scope of her employment pursuant to R.C.9.86 because the trial court's decision was based only upon a finding that appellant was not an employee of the state of Ohio. We further note that in Tschantz v. Ferguson (1989), 49 Ohio App.3d 9, we found that an immunity determination by the court of claims is not binding in a court of common pleas if an individual was not a party to the action in the court of claims. However, in Tschantz, we did not address whether a decision concerning immunity of an individual by an appellate court is binding upon a court of common pleas when the individual was allowed to fully participate at both the trial and appellate level. We find that since appellant was allowed to fully participate in the court of claims and the court of appeals, our decision is binding upon the court of common pleas if it is related to the present action and involves the same parties and individuals involved in the present action. Appellant's first and third assignments of error are sustained.
Because of our disposition of appellant's first and third assignments of error, we need not address appellant's second assignment of error because the issues raised in it are moot. See App.R. 12(A)(1)(c). The judgment of the Ohio Court of Claims is reversed, and this case is remanded to that court for further proceedings consistent with this decision.
BRYANT, P.J., and BOWMAN, J., concur.
[1] We note that none of the parties raised the issue before this court of whether appellant has standing to file the present appeal. Therefore, we will not address that issue. See Kaiser v. Flege (Sept. 22, 1998), Franklin App. No. 98AP-146, unreported, discretionary appeal not allowed (1999), 84 Ohio St.3d 1488.